210 So.2d 436

**Henry Thompson ANDERSON, Jr.**

**v.**

**STATE.**

**4 Div. 623.**

Court of Appeals of Alabama.

April 23, 1968.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

Alice L. Anderson, Enterprise, and Farmer & Farmer, Dothan, for appellant.

JOHNSON, Judge.

Appellant was found guilty by a jury of second degree burglary under an indictment returned by the Grand Jury of Houston County, Alabama. He was sentenced to a term of three years in the penitentiary as punishment therefor. From this judgment and sentence, appellant takes this appeal.

The State's first witness, Henry C. Butler, testified that on or about October 8, 1966, he operated the Woodside Lounge on Highway 92 in Houston County, Alabama; that on that date he closed said business around midnight; that he did not return until about 8:00 or 8:30 on Monday morning, October 10, 1966; that said lounge had been entered through the back of the building sometime between midnight Saturday and 8:00 or 8:30 A.M., Monday, October 10; and that there was some money and a camera, valued at about $125.00, missing at that time.

The State's next witness, Arthur Smith, testified that he was operating a filling station for Hol-Can Oil Company located on Highway 84 at about 11:00 on Saturday night, October 8; that at that time he saw appellant with Mr. Austin and another man at this filling station in a black 1957 Chevrolet automobile; and that appellant was eating and drinking something at this time.

Witnesses J. R. Pate and L. D. Skipper testified that they saw a camera in the home of Douglas Allen Austin at Route One, Chancellor, Alabama, on Sunday morning, October 23, 1966.

, State's witness Douglas Allen Austin, co-defendant in the case at bar, testified that he had known appellant for about eight years; that he was with appellant and Donald Floyd Godwin on Saturday night and early Sunday morning, October 8 and 9, 1966, at several places, including the Wagon Wheel, the Woodside Lounge, and the Hol-Can Oil Company; that while at the Woodside Lounge, he and Don Godwin bent the fan blade in the window fan on the left side of the building; that he crawled through and Henry Anderson stood outside with a shotgun and watched the building; that he went through, opened the back door and let Donald Godwin in and then appellant came in with the shotgun and watched from the inside looking outside; and that all three took the camera and went away with it.

On cross-examination, Austin testified that he had plead guilty to nine cases of Burglary and Grand Larceny in the Circuit Court of Geneva County, Alabama, and that he was then serving jail sentences in the County Jail as punishment and that at no time had he served any time in the penitentiary for these convictions, since they were all felonies.

Philip Austin was questioned by the district attorney as to the finding and uncovering of the camera, but, upon motion by appellant, the court excluded this witness's testimony.

State's witness, Arthur Smith, was then recalled on re-direct examination and stated that the filling station he was operating on the night in question was approximately three miles East of the Woodside Lounge. On cross, this witness testified that the automobile in which appellant came to his station stopped around the gas pumps in front; that it was headed towards Dothan; and that as far as he knew it went towards Dothan when it left, this being the opposite direction from the Woodside Place.

Appellant then took the stand in his own behalf and testified that he was not with the witness Austin on the night in question or on the next day; that he was in fact at the home of his grandmother, Mrs. Ruth Anderson about 300 yards from his own house; that his aunt, Alice Anderson, and his great aunt also lived at this home; that on Sunday afternoon he went to Millbrook, Alabama, with his aunt, Alice Anderson, who was ill and whom he took to a "Dr. Benton at Millbrook."

On cross-examination, appellant denied being with Austin and Godwin on the night in question but did state that he knew them.

Alice Anderson, appellant's aunt, testified that she was at her home on Saturday night, October 8; that he arrived about 9:00 P.M. and spent the rest of the night there; that he took her the following day to Millbrook, Alabama, to see her physician, leaving that afternoon and returning that night at about 8:30 or 9:00 Sunday night; and that he spent the rest of that night at her home.

Appellant's mother Mrs. Linda Anderson, testified that on the night in question her son went to Miss Anderson's house "a little after dark" and that he did not come back that night; that he spent the night at the home of Miss Anderson; that Miss Anderson was ill at the time; that he took his aunt to see her physician in Millbrook the following day, returning that night and spending the night at the home of his aunt.

Delano Anderson, uncle of appellant and brother of Miss Alice Anderson, testified that he was an instructor at Enterprise Junior College; that he and his wife went to his mother's home between 8:30 and 9:00 on the Saturday night in question and stayed for about thirty minutes; that appellant was there at that time; that the witness went back to his mother's on Sunday around noon at which time appellant was present and preparing to accompany his aunt to Montgomery; and that he (the witness) and his wife left before appellant and his aunt left on the trip to Montgomery. On cross-examination, the witness reiterated the testimony stating that he saw appellant on Saturday night between 8:30 and 9:00 and again on the next day between 11:30 and 12:00.

At the conclusion of the State's presentation of evidence, the appellant made a motion to exclude all of the State's testimony based on the theory that there was not sufficient evidence presented corroborating that of the accomplice Douglas Austin. The motion was denied.

The only evidence presented by the State which may be argued as corroborating that of Austin was the testimony of the witness Smith. Smith's testimony as pertinent to corroboration was that at about 11:00 P.M., Saturday night, he saw the appellant with Austin and one other person at his service station. He further testified that his service station is located about three miles from the scene of the alleged burglary. Tit. 15, Sec. 307, Code of Alabama, 1940, states as follows:

"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

Kemp v. State, 24 Ala.App. 591, 139 So. 437, states in part as follows:

"* * *. The only evidence of corroboration claimed in this case by the state is that this defendant was seen on the streets of the village where the crime was committed in company with the accomplice, riding in a model T Ford car, on the night of the burglary; that they passed up the street in open view three times, the last time going in the direction of defendant's home. *Nobody saw them doing anything out of the ordinary, and nobody testifies as to when the store alleged to have been broken into was entered.* The corroboration required by the section of the Code cited must be of some fact connecting defendant with the crime which will strengthen or make stronger the testimony of the accomplice. Segars v. State, 19 Ala.App. 407, 97 So. 747; Wallis v. State, 18 Ala.App. 108, 90 So. 35." (Emphasis added.)

In Commander v. State, 28 Ala.App. 42, 178 So. 241, this court held that the fact that the defendant was seen in the company of an admitted accomplice in the afternoon of the night of the alleged crime, which, from the testimony, was committed several hours thereafter, was no corroboration of the accomplice's testimony.

However, in Tidwell v. State, 37 Ala. App. 228, 66 So.2d 845, this court stated:

"* * * Yet, when the accomplice and accused are seen together in rather unusual places and times, in proximity to the scene of the crime which was committed at an unseasonable hour, the requirements of corroboration are met. DeGraaf v. State, 34 Ala.App. 137, 37 So.2d 130; Segars v. State, 19 Ala.App. 407, 97 So. 747; Ross v. State, 74 Ala. 532. * * *"

In the case at bar, there is no corroborating testimony as to when the crime was committed. Excluding the testimony of the accomplice, we find no evidence as to the hour or even the day that the burglary occurred. The only evidence in the record is that it occurred between the hours of 12:30 A.M. Sunday morning and 8:30 A.M.

Monday morning, a period of approximately thirty hours.

"The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. * * * It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt. * * *" Sorrell v. State, 249 Ala. 292, 31 So.2d 82.

■ We are of the opinion that testimony of the witness Smith was not sufficient evidence to corroborate that of Austin, the alleged accomplice. Standing on its own bottom, such testimony creates nothing more than a mere suspicion of guilt and as such cannot be considered as corroborating testimony under Tit. 15, Sec. 307, supra.

Appellant testified in his own behalf. Subsequent to his testifying, a number of witnesses testified to appellant's general reputation for honesty and integrity in the community being good.

On cross-examination, one of these witnesses, the Reverend Jessup, was questioned by the district attorney as to his knowledge of a number of breakings and enterings which occurred both prior and subsequent to the one in question.

Appellant contends that the questions relating to events occurring outside of the community and subsequent to the offense with which he is charged were improper and objections to them should have been sustained.

■■ If a defendant has not testified, the inquiry as to his character is limited to the time of the alleged crime or prior thereto. Carter v. State, 226 Ala. 96, 145 So. 814. However, if he testifies in his own behalf, his testimony may be impeached the same as that of any other witness, in which case evidence of his general character is admissible, not limited to truth and veracity, but not including special traits not affecting truth and veracity, and the time of such inquiry extends to the trial. Cooley v. State, 233 Ala. 407, 171 So. 725.

■ In the cross-examination of a witness who has testified to the good character of an accused, it is permissible to ask the witness if he has not heard of certain unworthy acts or misconduct on the part of the accused, naming such acts or misconduct. Such examination goes not to the character of the accused, but to the credibility of the character witness. Peyton v. State, 40 Ala.App. 556, 120 So.2d 415. See also Vaughn v. State, 17 Ala.App. 383, 84 So. 879; Vaughan v. State, 201 Ala. 472, 78 So. 378.

■ Thus, the witness, in testifying on direct examination to the accused's good reputation in the community, could only testify to what such reputation was *anterior* to the offense with which he is charged. Carter v. State, supra.

■ Therefore, on cross-examination, although the witness may be questioned about specific charges of acts allegedly committed by the accused inconsistent with the character to which the witness testified, such questions must be restricted to acts committed prior to the offense with which the accused is charged. Carter v. State, supra. See also Boyette v. State, 215 Ala. 472, 110 So. 812; Haithcock v. State, 23 Ala. App. 460, 126 So. 890.

■ The record discloses that the questions relating to those instances occurring subsequent to the offense charged were answered in the negative. Such negative answers removed the possibility of injury. Peyton v. State, supra; Jackson v. State, 35 Ala.App. 542, 50 So.2d 282; Dixon v. State, 38 Ala.App. 395, 85 So.2d 156.

For the error pointed out, the judgment in this cause is reversed and the cause remanded.

Reversed and remanded.