PATTERSON, Judge.
Appellant, Charles Massey, was charged in a three-count indictment with third degree burglary, first degree theft of property, and receiving stolen property in the first degree. At trial, the court granted the State’s motion to dismiss the first degree theft of property count, and the case was submitted to the jury on the remaining two charges. The jury found appellant guilty of receiving stolen property in the first degree, in violation of § 13A-8-17, Code of Alabama 1975. The trial court sentenced him, as a habitual offender, to a term of fifteen years in the penitentiary.
Appellant contends that the conviction was erroneously based upon the uncorroborated testimony of an accomplice. Appellant moved for judgment of acquittal at the conclusion of the State’s case in chief, citing this ground, among others, as error. This court can only consider the evidence which was before the trial court at the time the motion to exclude or motion for judgment of acquittal was made. McCoy v. State, 397 So.2d 577, 585 (Ala.Cr.App.), cert. denied, 397 So.2d 589 (Ala.1981). See also A.R.Crim.P.Temp. 12.
On November 3, 1983, Fletcher Rogers, owner of a pecan warehouse known as Farmers Pecan Market (hereinafter referred to as the Market), had approximately $1,400 in a bank bag, which was kept in his desk. This money was the proceeds of a land sale. At approximately 10:30 or 11:00 a.m., Rogers purchased thirty-nine pounds of pecans from three black males; appellant, Henry Hines, and Bobby Matthews. Rogers gave one of the three a total of $17.65 for the pecans. When Rogers paid for the pecans, he obtained the money from the bank bag. Apparently, the trio observed the large amount of cash, for Hines remarked about the “big roll of *591 money in the bag” and asked if it came from “the Co-op,” evidently referring to another party involved in the land sale. Appellant was present when these events occurred.
Rogers went to lunch at approximately noon, and returned to his office about thirty to forty-five minutes later. A window on the front door of the building had been broken, and the bank bag and money were missing from his office. Nothing else had been taken.
J.P. Colquett, an employee of the Opp Pecan Company (hereinafter referred to as the Pecan Company), located adjacent to the Market, observed Hines and “two other black individuals” enter the Pecan Company warehouse at approximately 12:30 p.m. Colquett was not sure if appellant was one of the three he saw. The trio remained in the warehouse for about ten to fifteen minutes, while they spoke with Mr. Mooney, who owned the Pecan Company. Hines was asking Mooney about a job, but Col-quett did not hear Mooney’s response. Later that day, Colquett observed the same three men at Taylor’s Grocery, and one of them was “going toward town.”
Coy Eddins, an employee of the Pecan Company, observed appellant pass the building in which he was working. Appellant was walking alone, behind Hines and Matthews. Evidently, the three men were not separated by a great distance. Eddins had no idea what time this occurred, other than that it was around lunchtime.
Henry Hines was the State’s primary witness and an admitted accomplice in the theft of the money from Rogers’s desk. Prior to appellant’s trial, Hines had pleaded guilty to receiving stolen property, and received three years’ probation. Hines testified that on November 3, 1983, he was “drinking and going on” with appellant and Matthews. The trio went to the Market at approximately 9:30 or 10:00 that morning and sold some pecans to Rogers. The trio purchased a fifth of wine with the proceeds and divided the remainder of the money equally among themselves. They then went to Hines’s residence and drank the wine. After drinking the wine, they went to Taylor’s Grocery, where appellant purchased a package of cigarettes.
Around noon, after drinking the wine and purchasing the cigarettes, the trio went to the Pecan Company, where Hines asked Mooney for a job. Appellant did not go into the building, according to Hines. Mooney told Hines that he did not have anything for Hines to do at that time, but to check back later. Hines and Matthews departed the Pecan Company and walked toward the “city yard.” As Hines dnd Matthews were walking, appellant caught up with them and said, “I’ve got it.” Appellant had a bank bag, which Hines “recognized” and “figured” came from the Market. The trio went to appellant’s house and divided the money. Hines received $250. Hines stated that he did not actually see appellant take the money, nor did appellant say where the money came from.
After splitting up the money, appellant “stopped” Billy Phillips on the street and Phillips took the three to Florala, where they “started back to drinking,” and Hines spent most of his money.
Billy Phillips testified that on November 3, he saw appellant at approximately 12:30 or 1:00 p.m., and gave appellant, Hines, and Matthews a ride to Florala. Phillips took them to appellant’s mother-in-law’s home in Florala.
Artis Reed, an auxiliary policeman with the Opp Police Department, testified that he was in Fort Walton Beach, Florida, two to three weeks after the break-in at the Market. While there, he saw appellant at a local motel. Reed spoke with appellant, and during the conversation, appellant said, “You ain’t seen me.” Reed testified that he had no idea what appellant meant by this statement, but when he returned to Opp, he learned that a warrant had been issued on appellant. Reed told the local authorities where appellant could be located.
Alabama courts have consistently adhered to the rule that an accused may not be convicted on the uncorroborated testi *592 mony of an accomplice. See Caldwell v. State, 418 So.2d 168 (Ala.Cr.App.1981), and cases cited therein; Ala. Digest, Criminal Law § 510; Ala.Code (1975), § 12-21-222. The test used to determine if there is sufficient corroboration of accomplice testimony is a subtraction process in which the testimony of the accomplice is set aside and “then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration....” Miller v. State, 290 Ala. 248, 250, 275 So.2d 675, 677 (1973). See also Senn v. State, 344 So.2d 192 (Ala.1977); Reed v. State, 407 So.2d 153 (Ala.Cr.App.1980), rev’d on other grounds, 407 So.2d 162 (Ala.1981); McCoy, supra; Keller v. State, 380 So.2d 926 (Ala.Cr.App.1979), cert. denied, 380 So.2d 938 (Ala.1980). “The testimony of an accomplice ‘remains in limbo as no evidence at all’ until it is corroborated by other evidence tending to incriminate the accused.” Staton v. State, 397 So.2d 227, 231 (Ala.Cr.App.), cert. denied, 397 So.2d 232 (Ala.1981). In testing the sufficiency of corroborating testimony, we apply the rules summarized in Craig v. State, 376 So.2d 803, 805-06 (Ala.Cr.App.), cert. denied, 376 So.2d 807 (Ala.1979):
“The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. The corroboration of an accomplice may be shown by circumstantial evidence.”
These rules must also be considered along with the related principle set forth by the Alabama Supreme Court in Sorrell v. State, 249 Ala. 292, 293, 31 So.2d 82, 83 (1947):
“The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not. sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt.”
See also Senn, supra; Stanton, supra; McCoy, supra; Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala.1978).
When the testimony of the accomplice Hines is omitted, the only evidence remaining is the testimony of Rogers, Col-quett, Eddins, Phillips, and Reed. Rogers places appellant with Hines and Matthews at his warehouse an hour to an hour and one-half prior to the break-in. Appellant made no statements nor engaged in any suspicious activity while in Rogers’s presence. Colquett’s testimony confirms Hines’s testimony that Hines was at the Pecan Company around 12:30 p.m. However, he contradicts Hines in that he stated he observed Hines with two other individuals, whereas Hines testified that he was there with Matthews only. Further, Hines testified that there were only the three of them together prior to leaving for Florala. Eddins’s testimony is unclear as to when he observed appellant, Hines, and Matthews. The charts used at trial were not contained in the record, and we do not have the benefit of that evidence to aid us in better understanding the testimony. Eddins’s testimony was that all three men were together when he saw them. Phillips corroborated the trip to Florala; however, this trip had nothing to do with the break-in. Reed’s testimony is totally inconclusive, as he had no idea as to what appellant was referring to, and while such a statement *593 may sound suspicious when viewed in the context of the break-in, there is absolutely nothing to suggest that appellant was, in fact, referring to the break-in. At most, the testimony of these individuals merely placed appellant in the company of two accomplices in proximity in time and place to the commission of a crime.
In Senn, 344 So.2d at 193, the court stated:
“Being seen in the company of an accomplice in close proximity in time and place to the commission of a crime is not in itself always sufficient corroboration to meet our statutory requirements. Tidwell v. State, 37 Ala.App. 228, 66 So.2d 845 (1953, per Harwood, J.) [cert. denied, 259 Ala. 464, 66 So.2d 848 (1953)]. On the other hand, if the accused and accomplice are seen together in unusual places and in close proximity in time and place to the scene of the crime, which was committed at an unusual hour, the requirements of corroboration may be met. Tidwell, supra.” (Emphasis in original.)
There was nothing unusual about the hour or place where appellant was observed with Hines and Matthews. As was noted in Caldwell, 418 So.2d at 171:
“When the circumstances of time and place are not unusual, other facts and circumstances, however slight, connecting the accused to the crime must be adduced to support the testimony of the accomplice in addition to or in conjunction with those of proximity, chronologically and geographically, to the alleged offense.” (Emphasis in original.)
In the instant case, there were no additional corroborative facts presented, “such as: the flight of the accused, escape of the accused, or testimony of the accused tending to corroborate that of the accomplice.” Id. Although it could be argued that Reed’s testimony established flight, we do not so conclude because of the time element involved and lack of any other factor to indicate flight.
The corroborative testimony in the instant case merely places appellant with Hines and Matthews near the time and place of the crime, where neither the place nor the time was unusual, and there were no additional corroborative facts upon which to justify introduction of the accomplice’s testimony. Therefore, we find that appellant was convicted upon the uncorroborated testimony of an accomplice, and appellant’s motion for judgment of acquittal should have been granted. Based on our holding in Caldwell, 418 So.2d at 171, this cause is due to be, and it is hereby, reversed and judgment rendered for the defendant.
REVERSED AND RENDERED.
All Judges concur.