Belton Grady Jackson, the appellant, was charged in separate indictments with the theft of automobile hubcaps from Stevensons Sons Used Cars and Thompson Motors, Inc. The indictments were consolidated for trial and Jackson was convicted in each case. Sentences were two years' and three years' imprisonment respectively. On appeal, Jackson argues that his convictions are based on the uncorroborated testimony of an accomplice.
William Eugene Cole testified that while driving home after midnight he stopped for an automobile on the side of the road. It was Jackson's car and Jackson asked Cole to take him and his two friends to Oneonta. In Oneonta they went to three used car lots. Cole would drive away and return while two of the men stole the hubcaps. Jackson remained in Cole's car. Although he may not have known what was happening at the first used car lot, there is little doubt that he knew exactly what was going to happen at the last two stops. Cole testified that he "didn't know what was going on until some time after this all started", and that he "argued about it, but after that, [he] did go along with it."
At the last car lot, Cole saw Jackson's two friends running from the car lot. They did not return to his car and Cole drove Jackson back to Birmingham to a place where Jackson said they could sell the hubcaps. They went to a man's house, Jackson took the hubcaps in and returned with some money. Cole then drove them to a motel, waited while Jackson got a room, and then left. Cole admitted that he had been indicted for the theft of these same hubcaps and it was stipulated that there was a plea bargain agreement.
Oneonta Police Officer Charles Harper observed a black Ford with "two young guys in it" about the time the thefts occurred. He saw Jackson and Cole in the car. Shortly thereafter he saw Jackson's brother, Adam, "coming across the parking lot [of Thompson Motors] with hubcaps in his hands, in a big stack of them." Harper caught Adam with the hubcaps but never found the other thief that night.
Early the next morning, Officer Harper found Jackson at the motel in Birmingham where Cole had left him. At this time, Jackson's brother was the only individual in custody.
The trial judge overruled Jackson's motion to exclude with the following comments:
 "[I]f I understand the rule on corroboration that you cannot convict the defendant under the uncorroborated testimony of an accomplice. Of course, the question then gets to the point: what is corroboration. Of course, you have an independent witness that testified in this case that placed the defendant in an automobile in the vicinity of the place where the alleged crime occurred. You have also got testimony other than that stated by the — that placed the defendant in the motel or found him in the motel, which, regardless of how strong it is, it would be, in the opinion of this Court, corroborative in nature to make a jury question out of it. I'm going to overrule your objection."
Here, we find that Cole's testimony was corroborated. This Court set forth the legal principles governing this issue inKimmons v. State, 343 So.2d 542 (Ala.Crim.App. 1977). Our Supreme Court summarized them in Senn v. State, 344 So.2d 192,193 (Ala. 1977): *Page 437 
 "Being seen in the company of an accomplice in close proximity in time and place to the commission of a crime is not in itself always sufficient corroboration to meet our statutory requirements. Tidwell v. State, 37 Ala. App. 228, 66 So.2d 845
(1953, per Harwood, J.). On the other hand, if the accused and accomplice are seen together in unusual places and in close proximity in time and place to the scene of the crime, which was committed at an unusual hour, the requirements of corroboration may be met. Tidwell, supra." (Emphasis in original.)
Here, in conjunction with the facts of association and proximity, the testimony of the accomplice is corroborated by the unusual place and unusual hour of this association. Senn, supra; Kimmons, supra. The corroboration of an accomplice may be shown by circumstantial evidence. Mathis v. State,414 So.2d 151, 155-56 (Ala.Crim.App. 1982);Tidwell v. State, 23 Ala. App. 409,410, 126 So. 186 (1930).
The fact that Jackson was found in the motel where Cole stated that he left him is one type of corroborative evidence because it constitutes a fact and circumstance ascertained in checking up on the accomplice's version of the affair which tends to support the truth of the accomplice's testimony.Slayton v. State, 234 Ala. 9, 11, 173 So. 645 (1937). However, this is not the type of corroboration that tends to connect the accused with the crime and is not the type of legal corroboration required by Alabama Code § 12-21-222 (1975) ("A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient"). "Evidence which merely tends to confirm the general credibility of an accomplice, as distinguished from confirming the accomplice in such a way as to connect accused with the commission of the crime, is insufficient as corroboration." 23 C.J.S. Criminal Law § 812 (2)(b) (1961).
Here, the corroborative evidence was not strong, yet it was sufficient. "[C]orroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense." Andrews v. State, 370 So.2d 320, 322 (Ala.Crim.App.), cert. denied, Ex parte Andrews, 370 So.2d 323 (Ala. 1979). See also McCoy v. State, 397 So.2d 577 (Ala.Crim.App.), cert. denied, Ex parte McCoy, 397 So.2d 589 (Ala. 1981); Craig v.State, 376 So.2d 803 (Ala.Crim.App.), cert. denied,376 So.2d 807 (Ala. 1979).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.